# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**04-0789**


**ANGELA L. OZBUN**

**VERSUS**

**CITY OF ALEXANDRIA**


**\*\*\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 213,713,
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield,[*] Judges.

**REVERSED.**

**Jeremy Cedars**
**Barry Ray Laiche**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**Post Office Box 1791**
**Alexandria, LA  71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **City of Alexandria**

**Angela L. Ozbun**
**1941 Monroe Street**
**Alexandria, LA  71301-6626**
**(318) 442-5613**
     **In Proper Person**

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as judge pro tempore.

PETERS, J.

In this unemployment compensation case, the employer appeals a judgment rendered by the Ninth Judicial District Court which reversed an administrative determination that the employee was disqualified from receiving unemployment compensation benefits. For the following reasons, we reverse the district court's judgment and reinstate the administrative determination.

## DISCUSSION OF THE RECORD

Angela L. Ozbun was an employee of the City of Alexandria (City) at the Alexandria Zoo and a member of the Alexandria Civil Service. She began working for the City on March 18, 1997, and submitted a letter of resignation from this employment on October 5, 2002. Ms. Ozbun gave the following explanation for her resignation in her resignation letter as follows:

> After more than five years of dedicated service, during which I was often commended for my hard work and pleasant demeanor, I am resigning due to the unbearable level of the hostile work environment that has existed for the past several months. Mr. [Leslie] Whitt's [the zoo administrator] intentional misconduct towards me is a situation that no employee should be subjected to. His latest act of retaliation against me on September 4th for filing a grievance against him has directly resulted in my resignation.
>
> I feel that I am left with no other recourse but to resign, given the hostility, harassment and retaliation I would continue to face, were I to return to work.

Shortly thereafter, Ms. Ozbun filed a claim for unemployment compensation benefits with the Louisiana Department of Labor (Department), giving the following reason for leaving her employment with the City: "After 5½ years of employment and absolutely no complaint of any kind, within three months I was suddenly confronted by three unfair and unjustified disciplinary actions . . . and cou[n]tless unsubstantiated complaints from alleged customers that were never proven." The Department disqualified Ms. Ozbun from receiving unemployment compensation

benefits on the following basis: "You left your employment because of dissatisfaction over disciplinary action taken by your employer. You left your employment for personal reasons and not for good cause attributable to a substantial change made to the employment by the employer."

Ms. Ozbun then appealed the disqualification to the Appeals Tribunal for the Office of Employment Security. Following a hearing, the administrative law judge (ALJ) determined that Ms. Ozbun "left her employment because she was issued a reprimand for reporting to work late." The ALJ concluded that this reason for leaving employment did not constitute good cause as required by law and therefore affirmed the Department's disqualification, subject to a modification regarding the effective date of the disqualification. Thereafter, Ms. Ozbun appealed the ALJ's decision to the Louisiana Board of Review for the Office of Regulatory Services (Board), and the Board found that the ALJ had properly decided the case.

Ms. Ozbun subsequently filed a petition for judicial review in the Ninth Judicial District Court (district court), seeking a reversal of the Board's decision. Following a hearing on the matter, the district court reversed the Board's decision and rendered judgment awarding unemployment compensation benefits. The district court gave the following reasons for judgment:

> The court, upon a review of the record, the court finds that there is, in fact, sufficient evidence in the record to allow this court to make a judicial review of the administrative law decision. And further, the court notes that the record reflects that Ms. Ozbun was entrusted with the duties of office manager for a period of time and then subsequently, later on, prior to her either leaving the job or being made to leave the job, this court found that she was relegated to the job of collecting funds from the ticket booth. This court finds that there was, in fact, evidence to the effect that there was a substantial change in her employment created by the City of Alexandria, specifically, the zoo department, and that as a result of this substantial change in her job duties, plaintiff was or did, in fact, resign . . . .

2

The City has appealed the district court's judgment, contending that the district court erred in substituting its own findings of fact for the Board's findings of fact and that the district court erred in reversing the Board's determination where there was sufficient evidence to uphold that determination.

**OPINION**

Louisiana Revised Statutes 23:1601(1)(a) provides that an individual shall be disqualified from receiving unemployment compensation benefits "[i]f the administrator finds that he has left his employment . . . without good cause attributable to a substantial change made to the employment by the employer." As set forth above, the Department found that Ms. Ozbun left her employment for personal reasons due to dissatisfaction over disciplinary action taken against her, and not for good cause attributable to a substantial change made to the employment by her employer. The ALJ agreed with that finding and affirmed, as did the Board.

Louisiana Revised Statutes 23:1634(B) provides that "the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Importantly, "the court should not reevaluate the credibility of witnesses or the weight to be given the evidence. The court should accept the agency's findings of fact if supported by evidence reasonably tending to sustain them." *Kemper v. Doyal*, 212 So.2d 166, 168 (La.App. 3 Cir. 1968).

According to Ms. Ozbun, she "was forced to resign" due to a "hostile work environment." Specifically, Ms. Ozbun claimed that she was the victim of retaliation and discrimination by her employer.

3

Ms. Ozbun began working at the zoo on March 18, 1997, eventually attaining the position of office assistant. However, in 1999, following the arrival of a new office manager/secretary, Ms. Ozbun was reassigned to the ticket booth, which job entailed few duties, leaving her with little or nothing to do, according to Ms. Ozbun. Ms. Ozbun's salary did not decrease with the reassignment. She believed the change in her job duties was due to discrimination because of her auditory receptive disorder, a medical condition which rendered her unable to express herself well; diabetes; and progressive alopecia, or hair loss. In connection with the alleged discrimination, Ms. Ozbun filed a grievance against the zoo administrator, Leslie Whitt.

Further, regarding her alopecia, Ms. Ozbun had "some very nice discussions" with Mr. Whitt about his concern over her condition. In fact, because Ms. Ozbun had exhausted all of her vacation and sick days, Mr. Whitt mentioned that she could take an unpaid leave of absence. While Ms. Ozbun initially understood that Mr. Whitt was trying to assist her by suggesting the unpaid leave, she ultimately became convinced that the leave was "more of a punishment type of leave" for filing the grievance.

In any event, Ms. Ozbun began her unpaid leave of absence on August 1, 2002. On September 4, 2002, she returned to work. Ms. Ozbun testified that on that date she arrived at work five minutes late and that Mr. Whitt wrote her up. She stated that additionally, because she had filed the grievance against Mr. Whitt, he retaliated against her at that time by threatening to write her up every time he saw her. According to Ms. Ozbun, Mr. Whitt said "that the ball was in his court, and that he would get his people and I would get mine." The following day, Ms. Ozbun requested to be placed back on leave of absence, which the City granted. Then, by letter dated October 5, 2002, Ms. Ozbun informed the City that she would not be

4

returning to work. According to Ms. Ozbun, she would not have quit her job had Mr. Whitt not made the statement that he was going to write her up every time he saw her.

Mr. Whitt testified that he was not aware of Ms. Ozbun's medical problems until her hair loss was evident. He denied discriminating against her and stated that she was given the ticket booth job because she had experience working in a ticket booth at a cinema and because of her personality. While Mr. Whitt admitting writing Ms. Ozbun up for being five minutes late, he explained that the write up was in the nature of a "discussion sheet to show that we had a conversation about her being late." He testified that he tried to explain to Ms. Ozbun that the discussion sheet was not part of her record because, in order to become part of her record, a disciplinary action had to go through the mayor. Mr. Whitt also denied telling Ms. Ozbun that he was going to write her up every time he saw her. Rather, he testified that he told her that they were going to have discussion sheets written up whenever they had discussions related to work, for her protection as well as his own. Mr. Whitt did admit that he "was annoyed that [he] had had a grievance filed against [him], because [he] spent so much personal time trying to find out what could be done for her condition. Because, [he] wanted to help her in every way [he] could." However, he denied writing her up because of the grievance she had filed against him.

It is apparent that Ms. Ozbun genuinely believed that she was being discriminated against and genuinely believed that Mr. Whitt retaliated against her for filing a grievance against him in connection with the alleged discrimination. However, the ALJ chose to credit Mr. Whitt's version of events rather than Ms. Ozbun's, and neither the district court nor this court sitting in review may reevaluate witness credibility or reweigh the evidence. Instead, we must accept the findings of

fact below if supported by sufficient evidence reasonably tending to sustain them. Mr. Whitt's testimony, as accepted by the ALJ and the Board, provided a reasonable basis for the determination that Ms. Ozbun left her employment because of dissatisfaction over disciplinary action taken against her and not for good cause attributable to a substantial change made to the employment by her employer. Thus, the district court erred as a matter of law in substituting its factual determinations for those of the ALJ. Accordingly, we reverse the judgment of the district court and reinstate the ruling below.

## DISPOSITION

For the foregoing reasons, we reverse the district court judgment and reinstate the judgment below, at Ms. Ozbun's cost.

**REVERSED.**